UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | : |
| | : CIVIL ACTION NO:  1:08-cv-472 |
| | : |
| | : |
| SUPREME OIL COMPANY, | : |
| | : |
| Petitioner, | : NOTICE AND PETITION TO |
| | : DISMISS ARBITRATION |
| : | |
| and | : |
| | : |
| UFCW LOCAL 174 COMMERCIAL HEALTH | : |
| CARE FUND AND COMMERCIAL PENSION | : |
| FUND | : |
| | : |
| Respondent | : |

Petitioner, Supreme Oil Company ("Supreme" or "Employer") moves for an Order

pursuant to Title 9, United States Code, Section 10 dismissing the arbitration noticed by the

Respondents herein for January 30, 2008 which is brought pursuant to the terms of a Collective

Bargaining Agreement between Local 342 and respectfully alleges:

1. Petitioner, Supreme, is a corporation duly organized and existing under the laws of the

State of New Jersey, with its principal place of business at 80 South Dean Street, Englewood,

New Jersey.

2. Respondent, UFCW Local 174 Commercial Health Care Fund and Commercial

Pension Fund, (the "Fund") are unincorporated associations duly organized and existing under

the provisions of E.R.I.S.A. (29 U.S.C. §1001 et seq.), with a principal place of business at 166

East Jericho Turnpike, Mineola, New York 11501.

3.  The jurisdiction of this court is invoked under Title 9, United States Code, and particularly Section 10 thereof.

4.  On or about December 18, 2006, Petitioner entered into a Collective Bargaining Agreement (the "CBA") with Local 1245 of the United Food & Commercial Workers International Union relating to the terms and conditions of employment of certain of Supreme employees.  A copy of the CBA is attached, marked Exhibit 1, and made a part hereof.

5.  Under color of the arbitration clause in the CBA, the Fund served upon Supreme a notice of arbitration before Arbitrator John Kennedy (the "Notice").  A copy of the notice is attached marked as Exhibit 2 and made a part hereof.

6.  The arbitration notice seeks arbitration "pursuant to the terms of a Collective Bargaining Agreement between UFCW Local 342, AFL-CIO (the "Union")" and Supreme Oil Company when, in fact, there is no Collective Bargaining Agreement between UFCW Local 342 and Supreme Oil Company.  There is no contractual obligation with Local 342 and, thus, no right to arbitration.

WHEREFORE, Petitioner moves the Court for an Order dismissing the arbitration noticed by the Fund for January 30, 2008 before Arbitrator John Kennedy which is brought pursuant to the terms of a Collective Bargaining Agreement between Local 342 and Petitioner.

JONATHAN J. LERNER
JL 2916
STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner
105 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-9200

Dated: January 16, 2008

EXHIBIT"1"

AGREEMENT entered into as of the 9th ~~18th~~ day of December, ~~2003~~ 6 between LOCAL 1245, UNITED FOOD & COMMERCIAL WORKERS, AFL-CIO, located at 275 Paterson Avenue, Little Falls, New Jersey 07424 (hereinafter called the "Union') and SUPREME OIL COMPANY, 80 South Dean Street, Englewood, New Jersey (herein after called the "Employer') .

WHEREAS, the parties desire to enter into an agreement, relating to wages, hours and other conditions of employment for the purpose of establishing and maintaining harmonious relations between them, and to that end, provide for a fair and peaceful adjustment of all disputes which may arise between them,

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree as follows:

## ARTICLE I - UNION RECOGNITION

The Employer hereby recognizes the Union as the sole collective bargaining agent on behalf of all production, shipping, receiving and janitorial Employees employed by the Employer, in the establishment or any other establishment now operated by the Employer located at the above address, excluding non-working supervisors and such other categories as are excluded by the Labor Management Relations Act of 1947, as amended.

## ARTICLE 2 -UNION SHOP

(A) It shall be a condition of employment that all employees of the Employer covered by this Agreement, who are members of the Union in good standing on the date of the signing of this Agreement shall remain members in good standing and those who are not members on the date of the signing of this Agreement, shall on or after the ninetieth (90th) day following that date of the signing of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all Employees covered by this Agreement and hired on or after the date of this Agreement shall on or after the ninetieth (90th) day following the beginning of such employment become and remain members in good standing in the Union.

(B) All new Employees, if and when hired, shall be deemed temporary and on a trial basis for a period of sixty (60) calendar days and thereafter they shall be considered as regular Employees. All such new Employees shall not be granted the same benefits, terms and working conditions as regular Employees until they shall be required to become Union members

as a condition of continuous employment which shall be on or after the sixtieth (60th) day subsequent to the beginning of their employment.

(C) The Employer shall be required to discharge within seven (7) business days any Employee upon written notification by the Union to the effect that said Employee is not in good standing, within the provisions of the Labor Management Relations Act of 1947, as amended.

## ARTICLE 3 - CHECK-OFF OF UNION DUES

(A) Subject to the delivery by the Union to the Employer of a written irrevocable assignment duly assigned by each Employee as required by law, the Employer shall deduct weekly from the wages of each Employee and remit to the Union monthly, no later than the fifteenth (15th) day of the month after each calendar month, the dues or initiation fee payable by such Employee to the Union.

(B) Provided there are changes in Employees, the Employer shall cause each monthly remittance to be accompanied by a full list of Employees, noting thereon Employees added or removed from the list during the preceding month, the respective dates of such additions and removals and the reason therefor, and in the case of an added non-Union Employee, also the word "New".

(C) It is agreed between the Employer and the Union, should the Employer fail to substantially comply with the terms of this section, that the Union, upon seven (7) days written notice, has the right to engage in any and all strikes, picketing or other job activities to protest the Employer's failure to abide by the provisions of this article and that such action shall not be a breach of this contract.

## ARTICLE 4 - HOURS

(A) Unless otherwise indicated by Rider attached to this document and incorporated herein, forty (40) hours shall constitute a standard work week for all Employees which shall be divided into eight and ½ hours with the ½ hour per day for lunch, per day, Monday through Friday inclusive.

(B) The standard work day shall be eight (8) and ½ hours, with the ½ hour per day for lunch, the lunch being not later than five (5) hours after starting time.

With the consent of the Union, which will not be unreasonably withheld or delayed, the Employer may schedule staggered lunch periods where required in order to protect the production schedule, raw materials or perishable merchandise. Employer retains the right to maintain one (1) or more groups of Employees working while other Employees are at lunch.

(C) All work performed after eight (8) hours of work shall be considered overtime and shall be paid at the rate of time and ½ the regular rate of pay Anyone who arbitrarily takes time off after acquiring overtime or violates any Employer/Employee regulation resulting in time away from the job during the week will be required to produce a Doctor's note if sick or will lose a proportionate amount of overtime worked.

(D) The Employer shall list five (5) starting daily shifts, currently scheduled at: 6:00-2:30; 7:00-3:30; 8:30-5:00; 10:30-7:00 and 1:00 to 9:30. Anyone who is required to work overtime before or after their shift shall be provided with twenty-four (24) hours notice and shall be required to work to the end of the regularly scheduled shift in order to receive their overtime pay. The Employer reserves the right to schedule if and when the daily shifts are to occur upon twenty-four (24) hours notice to the Employee and the Union. If an Employee cannot work at his regularly scheduled overtime shift, said Employee shall provide twenty-four (24) notice to the Employer.

(E) Overtime, where available, is to be distributed among all Employees as equally as possible. The Employer shall notify its Employees within twenty-four (24) hours if they are required to work overtime on that day and by lunch break on Friday if required to work overtime on Saturday. The minimum amount of time required for overtime work by the Employee is two (2) hours; if the employee desires, he/she may work a voluntary and additional hour(s) of overtime upon consent of the Employer. Shorter notices may be given only in the event of unforeseen circumstances not within the control of the Employer. The Employer shall determine when overtime work shall be performed. No Employee shall be required to work more than reasonable hours of overtime.

Scheduled overtime must be posted by 3 :00 p.m. on Friday the week before the schedule overtime.

(F) An Employee may schedule to work overtime hours with the Employer; however, if the Employee fails to appear for the overtime work three (3) times within a six (6) month period, then said Employee loses the privilege to work the overtime hours and is required to wait until the beginning of the next scheduled shift to begin work.

(G) Providing that the employee has worked or been paid for the first five (5) days of the work week, the sixth (6th) day shall be paid at the rate of straight time and ½ for first tier employees only.  Any work performed on the seventh (7th) day shall be paid at double time.

(H) First tier Employees shall not be required to work on Saturdays or the holidays set forth in Article 8.  If a first tier Employee agrees to work on a Sunday or holiday or, if an Employee is called in to work on a Saturday, the Employer guarantees four (4) hours work on such days, or four (4) hours pay in lieu thereof, at the rate of pay called for such days.

(I) All Employees shall be granted two (2) fifteen (15) minute rest periods each day scheduled at 10:30 a.m. and 3:15 p.m.

## ARTICLE 5 - WAGES

(A) There shall be no wage reduction in any case where Employees receive higher wages than those provided for in this Agreement. All Employees covered by this Agreement shall receive no less than the minimum weekly or hourly rates for all job classifications as set forth in Schedule A attached hereto.

(B) All Employees shall receive the following wage increases as follows:

October 1, 2003 6  increase by forty (40) fifty (50) cents per hour; *
October 1, 2004 7  increase by twenty (20) twenty-five (25) cents per hour;
October 1, 2005 8  increase by twenty-five (25) twenty (20) cents per hour.

*All straight time retroactivity is to be paid on or before December 22, 2006.
All overtime retroactivity is to be paid on or before January 19, 2007.

(C) No Employee shall suffer a reduction in pay because of a temporary transfer from one job to another.  Employees who are temporarily switched from a lower paid position to a higher paid position shall receive the higher rate of pay for the job to which they were switched for all hours worked on that job. Employees who are permanently switched from a higher paid position to a lower paid position shall receive the lower rate of pay for the job to which they were switched for all hours worked on that job. A switch cannot be made without a one (1) week notice to the Union and the Employee and the Union reserves the right to pursue grievance procedures if deemed necessary .

(D) An Employee who is injured in the course of his regular employment and who, as a result of such injury shall be unable to continue to work for the remaining part of the day shall receive eight (8) hours' straight time pay for such day, provided that he present to the Employer, a certificate of a duly licensed physician who examined the injury, stating that he was unable to continue work on that day because of said injury .

(E) If an Employee presents satisfactory proof that the Employer has incorrectly paid the Employee less than the Employee's due wages, the Employer shall make every reasonable attempt to pay the Employee as soon as possible.

(F) Full time hi-lo drivers will receive an additional twenty five ($.25) cents per hour.  One operator of the Columbia Machine and one operator of the 6-1 line will receive an additional fifteen ($.15) cents per hour premium.

## ARTICLE 6 - SHIFTS. PREMIUM PAY AND ADDITIONAL SHIFTS

If the Employer wants to create a premium shift(s), the Union reserves the right to negotiate wages for the premium shift(s). Each employee who has completed progression working a twelve hour shift from 12:00 noon to 12:00 midnight shall receive an additional ~~twenty cents (20¢)~~ thirty (30¢) per hour as a shift differential, all others shall receive twenty (20¢) per hour.

## ARTICLE 7 - GUARANTEED WORK DAY

Employees regularly scheduled for full-shift work shall be given eight (8) hours work or the monetary equivalent thereof unless notified on the previous day not to report, except in the case of power failure, acts of God or other such circumstances beyond the Employer's control. This provision shall not apply to part-time or premium work.

## ARTICLE 8 - HOLIDAYS

(A) Employees shall not be required to work on Sundays or the following holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King's Birthday | Thanksgiving Day |
| Washington's Birthday | Day After Thanksgiving |
| Memorial Day | Christmas Day |
| Independence Day | New Years Day |
| Columbus Day | Good Friday |
| Yom Kippur | |

(B) Both the Day before Christmas and Day Before New Year's shall be made whole in that no Employee will be required to work past six (6) hours with one (1) fifteen (15) minute break or have their starting time changed to increase the amount of time worked.

(C) Regular Employees shall have each day of the above scheduled holidays off with pay at straight time provided that the Employee must have worked the day before and the day after said holiday. Any Employee who does not work the day before and the day after a holiday must provide proof of necessity to the Employer's satisfaction in order to receive pay for that holiday. Those scheduled holidays shall be paid for even though they occur on a day which is ordinarily a non-working day. Employees on vacation when any of said holidays occur, shall receive holiday pay in addition to their vacation pay.

(D) If a scheduled holiday occurs on a Saturday, at the Employer's option, it may be observed on the preceding Friday. If a scheduled holiday occurs on a Sunday, at the Employer's option it may be observed on the succeeding Monday.

(E) If any Employee shall agree to work on a holiday, they shall receive pay at the rate of time and one-half in addition to their holiday pay. For work performed after eight (8) hours on such holiday, overtime shall be calculated at twice (2) the rate of pay for such day.

(F) Employees absent because of illness or injury shall receive holiday pay for any of said paid holidays-falling during such period of illness or injury for a period of thirty (30) days following the last day worked before such absence provided they are not collecting unemployment, disability or workers compensation.

## ARTICLE 9 - VACATIONS

(A) All Employees who have been in the employ of the Employer for the periods of time specified below shall receive a vacation with pay in advance, at the regular rate being paid at the time of such vacation, in accordance with the following schedule:

Upon completion of one (1) full year.................................................1 week

Upon completion of two (2) full years
but less than ten (10) full years.........................................................2 weeks

Upon completion of ten (10) full years
but less than twenty (20) full years....................................................3 weeks

Upon completion of twenty (20) full years
but less than thirty (30) full years......................................................4 weeks

Upon completion of thirty (30) years...............................................5 weeks

Employees who have worked more than six months but less than one (1) year shall receive a vacation proportionate to the part of the year worked retroactive to the date of hiring.

Vacation pay shall be at the Employee's rate of pay in effect at the time of the Employee's vacation and shall be paid to the Employee with the last payroll check prior to the Employee's vacation.

(B) Such vacation shall be given during the months of February, March, April, May, June, July, August, September, and October except that with the consent of the Union, vacation may be scheduled at other periods of time where the Employer's business is of a seasonal nature or other pressing circumstances so require. All Employees shall be entitled to the set vacation, whether or not they shall have been employed by the Employer continually for the period required.

(C) Any Employee entitled to four (4) weeks vacation shall take at least one (1) vacation week during the slow period of the Winter as fixed by the Employer. An Employee may take three (3 weeks) vacation consecutively as long as the Employer is given at least two (2) weeks notice and, in the Employer's discretion, said vacation will not interfere with the Employer's work schedule.

Such vacation shall not be arbitrarily denied.

(D) In the event one or more holidays occur during the time the Employee receives his vacation, he or she shall receive such holiday pay in addition to his or her vacation pay.

(E) Any Employee quitting without at least forty-eight (48) hours written notice to the Employer and the Union shall not be entitled to any vacation pay.

## ARTICLE 10 - SICK LEAVE

(A) Each Employee with more than ninety (90) days continuous service with the Employer shall receive six (6) days sick leave with pay during the calendar year. No more than two (2) sick leave days may be paid each calendar quarter with no more than one (1) additional sick leave day advances per calendar quarter .

(B) If any Employee does not use his or her sick leave during the course of a calendar year, the Employee shall receive a full day's pay for each such day of unused sick leave. Payment for unused sick leave shall be made by the Employer not later than the fifteenth (15th) day of January of each year for the proceeding calendar year and shall be at the Employee's rate of pay at the end of the previous year.

(C) Any Employee who has worked only part of the calendar year (but for more than six months) shall receive paid sick leave on a pro-rata basis.

(D) Any Employee quitting without at least forty-eight (48) hours written notice to the Employer shall not be entitled to any unused sick leave.

## ARTICLE 11 - PROMOTIONS

(A) In the case of promotion of an Employee or Employees covered by this Agreement, the principle of seniority shall be applied and the Employee with the longest term of employment with the Employer shall be promoted wherever such Employee is qualified to do the work as decided in the sole discretion of the Employer; however, the Union reserves the right to pursue grievance procedures if deemed necessary.

(B) Should the Employee so promoted prove unsatisfactory during the first ninety (90) days I said Employee must be transferred back to his previous job at his previous pay.

(C) All Employees transferred or promoted temporarily or permanently to a job having a higher rate of pay shall be paid the rate of the new classification for the length of their promotion.

(D) In the event an Employee is transferred to a job for which there is no classification established in this Agreement, the rate of pay for such job shall be established by mutual Agreement between the Union and the Employer.

(E) Employer will conspicuously post for one (I) week in three (3) languages (English, Spanish and Creole) any job openings currently available with the Employer.

## ARTICLE 12 - LAYOFF. SENIORITY AND RECALL

(A) Employees may be laid off as a result of a lack of work and/or diminution of business and on condition that three (3) days facsimile notice be sent by the Employer to the Union wherein the Employer sets forth the reasons for the layoff. An Employee who is laid off shall receive paid sick leave and vacation pay on a prorated basis computed to the day of the layoff.

(B) If laid off because of a lack of work and/or diminution of business, no new Employees are to be hired until all those laid off shall be re-hired. On re- hiring Employees previously laid off, Employees shall be re-hired in inverse order of layoff; the Employees last laid off shall be the first re-hired, wherever such Employees are qualified to do the work then available.

(C) Employees to be re-hired shall be given notice by the Employer by certified mail, return receipt requested, at their last known address and a copy of same shall be sent to the Union, giving information as to the time and date the Employee should return to work.

(D) Any Employee who fails to report to work during a period of forty- eight hours, excluding Saturdays or Sundays, loses his seniority rights unless such delay in reporting was caused by the Employee's illness upon proof by a licensed physician or other good reason and upon notification to the Employer, such Employee may be given additional time to report.

(E) The Employer shall be required to prepare and submit to the Union a seniority list based upon all Employees' length of service, including additions and deletions on the list as they occur, and the Union shall be furnished with a revised list every twelve months.

(F) The obligation to rehire Employees who have been laid off shall be according to the following schedule:

| Length of Employment | Period of Eligibility |
|---|---|
| 3 months to five years | six (6) months |
| 5 years or more | one (1) year |

## ARTICLE 13 - WELFARE FUND

(A) The Employer agrees to contribute monthly, the first week of each month to UFCW Local 174's Commercial Healthcare Fund (plan A), the following sums per month for all covered Employees who have worked at any time during the month after six (6) month's employment:

### Family Plan

| Effective Date | Contribution |
|---|---|
| October 1, 2006 | $660.00 per month |
| October 1, 2007 | $740.00 per month |
| October 1, 2008 | $815.00 per month |

### Single Plan

| Effective Date | Contribution |
|---|---|
| October 1, 2006 | $437.00 per month |
| October 1, 2007 | $516.00 per month |
| October 1, 2008 | $591.00 per month |

~~The Employer agrees to contribute monthly, in the first week of each month, to both the UFCW Local 174 Commercial Healthcare Fund (Plan A) and to the Local 1245 Benefit Plan Administration the following sums per employee per month for all covered employees who have worked at any time during the month after six (6) months of employment~~

~~Family Plan~~
~~Effective October 1, 2003      $590.00 per month~~
~~Effective October 1, 2004      $590.00 per month~~
~~Effective October 1, 2005      $590.00 per month~~

~~Single Plan~~
~~Effective October 1, 2003      $271.00 per month~~
~~Effective October 1, 2004      $295.00 per month~~
~~Effective October 1, 2005      $334.00 per month~~

- 9 -

(B) Said contributions will be allocated between the two Funds as follows:

(a) UFCW Local 174 Commercial Health Care

Family Plan
Effective October 1, 2003          $458.00 per month
Effective October 1, 2004          $508.00 per month*
Effective October 1, 2005          $558.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

Single Coverage
Effective October 1, 2003          $271.00 per month
Effective October 1, 2004          $295.00 per month*
Effective October 1, 2005          $334.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

(b) Local 1245 Benefit Plan Administration

Family Plan
Effective October 1, 2003          $132.00 per month
Effective October 1, 2004          $ 82.00 per month*
Effective October 1, 2005          $ 32.00 per month*

*Rates may be decreased as a result of a call-up from the 174 plan.

(C) It is intended that the Employer continue its contribution into the UFCW Local 174 Commercial Health Care Fund and that the employees covered thereunder receive benefits from that Fund in accordance with the contribution rate, the UFCW Local 174 Commercial Health Care Fund (Plan A), and this Collective Bargaining Agreement.

(D) It is intended that additional contribution to the Local 1245 Benefit Plan Administration establish the Employer's rights and obligations as a contributing Employer to that Plan. The parties intend that Employer shall, on or before October 1, 2006, withdraw from coverage and contribution to the UFCW Local 174 Commercial Health Care Fund and contribute fully at the then effective contribution rate to the Local 1245 Benefit Plan Administration with its employees receiving coverages under the Local 1245 Benefit Plan Administration in accordance with that Plan and this Collective Bargaining Agreement. The contributions made by this

- 10 -

~~Employer to the Local 1245 Benefit Plan Administration during the term of this Collective Bargaining Agreement shall be applied as a credit to the Employer's contribution rate at the time the Employer withdraws from the UFCW Local 174 Commercial Health Care Fund and effects coverage under the Local 1245 Benefit Plan Administration.~~

~~(E) In the event the Trustees of the Local 1245 Benefit Plan Administration do not permit this Employer to contribute towards coverage on behalf of its eligible employees, any funds paid under this paragraph to the Local 1245 Benefit Plan Administration shall be refunded to the Employer without interest at such time.~~

(F̶ B) Said UFCW Local 174 Commercial Healthcare Fund shall be jointly administered by the Employer and the Union and the principal and income thereof shall be used for the sole and exclusive benefit of the Employees of the Employer contributing thereto, and .for the Employees of the Union, the Local 174 Pension Fund and this Fund (provided contributions are made on their behalf) and their families and dependents including the administration and maintenance of said fund. The trustees are authorized to invade and expend the Principal of the Fund, if necessary , to provide benefit to the Employees, their families and their dependents.

(G̶ C)  The said UFCW Local Healthcare Fund shall have its principal office in the city and State of New York and shall be governed by an equal number of Union and Employer Representatives in accordance with the amended Restated Agreement and Declaration of Trust dated December 17, 1975, as amended.

(H̶ D)   The Employer agrees to continue to make contributions to the Health Care Fund for one month on behalf of any Employee of the Employer who is disabled, injured in an accident or suffering from an illness which prevents said Employee from working for said Employer.

(I̶ E) The Employer hereby agrees to accept the Employer Trustees of the Healthcare Fund who may be selected as is provided in this Article as its representatives in the joint administration of said fund.

(J̶ F) It is agreed between the Employer and the Union that should the Employer fail to comply With the terms of this section, that upon ten (10) days notice and opportunity to cure, the Union shall have the right but not the obligation to engage in any and all strike, picketing or any job activities to protest the Employer's failure to abide by the provisions of this article and that such action should not be a breach of this agreement.

(K̶ G) The Employer hereby adopts, ratifies and agrees to be subject to, and bound by all of the terms and provisions of the amended and Restated Agreement and Declaration of Trust, dated December 17, 1975 together with and all amendments thereof, heretofore and thereafter duly approved or to be approved by the Trustees of said fund.

- 11 -

New hires after 1/13/98 will be covered by Single Plan " A" Commercial Welfare ~~as set forth above~~ until they reach 3 years of service  at which time if they have proof of immediate family (son, daughter, spouse) will receive family coverage.

## ARTICLE 14 - PENSION FUND

(A) The Employer agrees to contribute monthly within the first week of each calendar month. to UFCW Local 174's Pension Fund, the following sums per month for all covered Employees who have worked anytime during the month after one (1) year of service:

| Effective Date | Amount |
|---|---|
| October 1, 1997............................. | $70.00 |
| October 1, 1998............................. | $75.00 |
| October 1, 1999............................. | $80.00 |

(B) The said Local 174 Pension Fund shall have its principal office in the City and State of New York and shall be administered by a Board of Trustees consisting of an equal number of Employer and Union Trustees in accordance with the Amended and Restated Agreement and Declaration of Trust, dated December 17.1975, as amended.

(C) Said UFCW Local Pension Fund shall be jointly administered and the principal and income thereof shall be used for the sole and exclusive benefit of the Employees of the Employers contributing thereto and for the Employees of the Union, the Local 174 Healthcare Fund and this fund (provided contributions are made on their behalf) and for payment of all expenses including the administration and maintenance of said Fund. Benefits provided shall be based upon accepted actuarial standards and practices and in accordance with the amended and Restated Agreement and Declaration of Trust, the Pension Plan ( as amended) and any by-laws, rules and regulations which have been or may hereafter be adopted by the Board of Trustees, and any and all amendments  hereto.

## ARTICLE 15 - CONTRIBUTIONS DEFAULT

(A) In the event the Employer shall fail to pay when due the contributions payable to the Health Care or Pension Fund, the Union shall have the right, but not the obligation, to engage in any and all strikes, picketing or other job activities to protest the Employer's failure to abide the provisions of this article until further payment is made.

(B) If the Employer is delinquent or defaults in any contribution or payments due to the Health Care Fund or Pension Fund, any party of this agreement, including the Trustees of the Funds to which the contributions are due, upon ten (10) days notice and opportunity to cure, may initiate action to collect the debt, in which event the Employer shall pay, in addition to the contributions is due, all reasonable costs and expenses incurred by the initiating party in

arbitration and/or court, or in other action and in the enforcement of any award or judgment including but not limited to, reasonable attorneys fees, accountants, auditors fees, disbursements at current judicial interest rates.

(C) Notwithstanding any other provision of this agreement, the parties specifically agree that any claim for failure by the Employer to pay any contribution due under this agreement to the funds specified may be made and submitted for arbitration by any parties hereto and/or by the Trustees of any Fund to which contribution are to be made pursuant to the provisions of this Agreement upon at least thirty (30) days written notice to the Employer on record with the office of the Fund to which contributions are due. The arbitrators will be selected, first by the Union, the second by the Employer and an independent third arbitrator selected by both the first and second arbitrators. The arbitrators shall follow the AAA rules of arbitration and their award shall be final, binding and enforceable in any court of competent jurisdiction.

(D*) The Trustees shall have the authority to audit the payroll books and records of the Employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such audit may be undertaken pursuant to a routine program or on an individual basis. Whenever an audit is authorized, the Employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include: (a) all records which the Employer may be required to maintain under Section 209(a)(1) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, canceled payroll checks, copies of the Employer's federal, state, and local tax report, and all other documents and reports that reflect the hours and wages or other compensation of the Employees or from which such can be verified. In the event the audit discloses that the Employer has not paid contributions as required by the Collective Bargaining Agreement, the Employer shall be liable for the costs of the audit. The Trustees shall have the authority, however, to waive all or part of such costs for good cause shown.

(E*) It is recognized and acknowledged by all parties, including the Employer, that the prompt and accurate payment of contributions is essential to the maintenance of an Employee benefit trust fund and benefit plans and that it would be extremely difficult, if not possible, to fix actual expenses and damage to the trust Fund that would result from failure of an Employer to pay the required contributions within the time provided. Therefore, if any Employer shall be delinquent in the payment of contributions, such Employer shall be liable, in (20%) of the amount of the contributions which are owed or twenty-five dollars ($25.00), whichever is greater. The Trustees shall have the authority, however, to waive all or part of the liquidated damages or interest for good cause shown.

## ARTICLE 16 - EQUAL OPPORTUNITY AND NON-DISCRIMINATION

There will be no discrimination against any Employee or applicant for employment because of race, creed, color, sex, national origin or age.

Where the masculine or feminine gender appears in this Agreement, it is used solely for the purpose of illustration and is not, in any way, used to designate the sex of the Employees application of this Agreement.

## ARTICLE 17 - EMPLOYEE'S RIGHTS

An Employee shall not be required to cross a picket line. The Union may participate in any and all Union activities, strikes, and boycotts which may be permitted by existing legislation or any of its amendments or court decision.

## ARTICLE 18 - STRIKES OR LOCK OUTS

(A) There shall be no strikes or lockouts for the duration of this agreement. In the event that the Employer fails to comply with the terms, conditions and provisions contained herein and persists in its refusal therein, then, in such event, and upon ten (10) days notice and opportunity to cure, the Employee waives the provisions herein and the Union shall have the right, but not the obligation, to engage in any and all strikes, picketing or other job activities to protest the Employer's failure to abide by the provisions of this agreement.

(B) The Union, its officers, representative, and/or agents shall not be held liable in the event that any of the Articles contained herein shall be found to be inconsistent with any existing Federal or State legislation, and as a result thereof, the Employer sustains any loss or damage.

## ARTICLE 19 - DISCHARGE

No Employee, except those on a trial period pursuant to this Agreement, may be discharged except for just cause. Except in the cases of egregious circumstances, three (3) written notifications to the Employee and the Union of violation of Employer's rules and regulations concerning job duties as delineated in Article 37 within a six (6) month period shall establish just cause. If the Union disagrees with the discharge, then the grievance shall proceed to arbitration in accordance with the provisions of Article 20 and, in if the arbitrator finds the discharge was without cause, then the Employee must be reinstated with back pay and full benefits.

In the case of an egregious act or omission by an Employee, the Employer may suspend and/or discharge said Employee upon prompt written notice with explanation to the Employee and the Union.

## ARTICLE 20 - GRIEVANCES AND ARBITRATION

(A) All grievances arising between Employees and the Employer shall be reported to the Union. The Employer and the Shop Steward shall try to settle such grievances immediately at the plant. If no Shop Steward has been elected by the Employees, or if the Shop Steward is

- 14 -

unavailable, the grievance shall be referred directly to the Union. Should they not succeed in settling the dispute, the Employer and/or Shop Steward will notify the Union of the pending grievance. The Union shall immediately try to reach an adjustment within five (5) working days. If no settlement of the grievance has been reached within ten (10) working days thereafter, the matter shall, within forty-five (45) days from the date of notice of discharge, be referred to the New Jersey State Mediation Board for arbitration, no matter where the Employer's plant is located. If the matter in dispute is not a discharge, then the matter shall be referred to the New Jersey State Mediation Board for arbitration within thirty (30) days from the date on which the Union and the Employer agree that they are unable to reach an adjustment.

(B) Any Employee required to testify before hearings with regard to arbitration, mediation or the settlement of a dispute, and whose testimony is necessary and material, shall not suffer any loss in wages by reason thereof.

(C) Hearings, whenever possible, shall be held in the afternoon.

(D) Records of the Employer, kept in the normal course of business are to made available to the Union, if necessary for the settlement of a grievance.

(E) No claim shall be made with respect to any grievance unless such claim shall be presented to the Employer within thirty (30) days after the Employee becomes aware of his or her rights to make a claim. Illness of the Employee will toll the thirty (30) day period upon presentation of proof of illness and duration of the toll shall coincide with the length of said illness.

(F) The parties agree to abide by the award in connection with any arbitration commenced under this article, and further agree that such award may be confirmed by the Superior Court of the State of New Jersey, or by the appropriate United States District Court in the New Jersey, as selected by the parties seeking to confirm the award and the parties hereby submit to, and waive any objections to, the jurisdiction of such courts.

(G) A copy of Notice of Intent to Arbitrate, or similar notice demanding arbitration, shall be served by Petitioner upon the other party by registered or certified mail, return receipt requested, to the address set forth in this agreement or such other address as designated by the party in writing to the other party.

Upon failure of a party to appear at a hearing, the arbitrator(s) may render an ex~ parte default award. Any subpoenas and any written demand for information may be served by the serving parties upon the other party personally by registered or certified mail, return receipt requested, or by regular non-registered non-certified first class mail, postage prepaid to the address set forth in this agreement or any other address as designated by the party to be served in writing to the other party . Each party agrees that it will promptly comply with the subpoena and written demands made upon it by the other party for relevant information or evidence in

connection with an arbitration proceeding including, but not limited to, the Employee's complete personnel file, and further agrees that if requested by the demanding party the other party shall deliver such information or evidence to the demanding party promptly after receipt of the subpoena or written demand.

(H) In the event the Employer refuses or otherwise fails to comply with an arbitration award rendered in connection with this agreement, the Union and the Employees covered by the agreement may engage in a strike, picketing other job related action notwithstanding the provisions against strikes or job related actions contained in this agreement. The Employer shall not take any adverse action against the Employees or the Union for participating in or supporting any strike, picketing or any other job related actions permitted by this Section H.

(I) The expense of any arbitration proceeding shall be shared equally by the Employer and the Union. Each party shall, however, bear its own legal expenses and those of its witnesses to the proceedings.

(J) The arbitrator shall have no power to add to, subtract from, or modify any of the terms of this agreement.

(K) Notwithstanding the provisions of this article, the parties may mutually agree upon a manner, other than arbitration, in which to adjust any dispute or grievance in connection with this agreement.

## ARTICLE 21 - SHOP STEWARDS

The Employer shall recognize the Shop Stewards elected by the Employees or appointed by a paid official of the Union and agrees to meet with and deal with said Shop Steward for the purpose of aiding in the settlement of any disputes which may arise by and between the Employer and the Employees. The Shop Steward shall be the sole and only voice for all Employee grievances and shall represent said grievances on behalf of the Employee or Employees. The Shop Steward shall at all times maintain preferred seniority over any and all other Employees irrespective of their term of employment.

The Shop Steward shall receive one (1) paid day off per contract year to attend a Local 1245 Seminar.

## ARTICLE 22 - INDIVIDUAL CONTRACTS

It is hereby understood and agreed by and between the respective parties hereto, that the Employer shall refrain from entering into any agreements with any of its Employees in order to modify any of the conditions contained herein.

This agreement shall not in any way or manner alter, change or deprive any of the Employees of conditions which they are presently enjoying or working under, which conditions may be better than those specified herein, and said Employees shall continue to receive such better conditions for the duration of the Agreement.

## ARTICLE 23 - UNIFORMS AND TOOLS

The Employer shall supply two (2) uniforms per year to all Employees at no cost to the Employees. Each Employee must clearly display his or her badge or identification decal while in uniform and during all scheduled work shifts. Any Employees not appearing for work with a clean uniform will be in violation of the Employer's rules and regulations and will be subject to the terms and conditions described in Article 19. At the end of the calendar year, ~~12/30/04, 05, 06~~ 12/30/07, 08, 09 old uniforms must be returned by the Employee, wherein a new uniform will be issued. Failure to return an old uniform will result in the Employee bearing the cost for his or her new uniform. If any part of the uniform needs to be replaced during the year due to loss, carelessness or altering by the Employee, then the Employee will bear the cost of replacement. The Employee is solely responsible for the up-keep, maintenance and laundering of their uniforms. An Employee, upon leaving the employment of the Employer, must return his or her uniforms before receipt of their last payroll check.

Gloves and one (1) cold weather jacket shall be provided at no cost to an Employee for the term of this agreement for those working outdoors and under the provisions stated above.

## ARTICLE 24 - UNION SIGN

The Employer shall display prominently, in its place of business, the Union Shop Card for the purpose of informing the public that the Employer's establishment is fair to organized labor and that its Employees are represented by the Union. However, such Union Shop Card shall remain the property of the Union and shall be surrendered upon failure of the Employer to comply with the provisions of this Agreement. The Union Shop Card shall be surrendered to the Union upon receipt of written notice sent to the Employer requesting the return of the Union Shop Card.

## ARTICLE 25 - UNION VISITATION

The Business Agent or other representatives of the Union shall have the right to enter any of the work rooms of the Employer during the time of establishment is open for the purpose of investigation or for the purpose of discussing with the Employer or his Employees any complaint or any other matter affecting the relations between the Employer and Employee in the Union. Said visitation shall be upon telephone notification.

## ARTICLE 26 - FUNERAL LEAVE

(A) In the event of an Employee's inability to report to work because of a death in his immediate family, a regular Employee shall be allowed ~~upon~~ to three (3) consecutive days funeral leave with pay at straight time, provided that, if so requested, the Employee submit to the Employer a photostatic or certified copy, in English of such Death Certificate of the death of said family member and satisfactory proof, in English, of the decedent's relationship to the Employee.

(B) The term "immediate family", as used herein, shall mean spouse, parents and children.

## ARTICLE 27 - LEAVE OF ABSENCE

Any Employee desiring a leave of absence from employment, without pay, shall secure written permission from the Employer. A copy of such permission and schedule shall be sent to the Union. The Employer agrees that permission for a leave of absence will not be unreasonably withheld taking into consideration both the needs of the Employer and the Employee. In no instance will an Employee be granted a leave of absence for an individual day unless the Employer is notified at least one (1) hour prior to the starting time for said Employee's shift or regularly scheduled starting time,. except in case of proven emergency as determined by the Employer.

## ARTICLE 28 - LABOR MANAGEMENT COMMITTEE

The Union shall select a committee of three (3) workers to meet with the company's designee to review and recommend corrections in Health, Safety and other conditions that effect the workers in the plant. Such meeting shall be held no more than once every month and shall not exceed an hour in duration. Said meeting is currently scheduled for the first Monday of every month and all committee members will be paid their hourly wage during the meeting.

## ARTICLE 29 - CREDIT UNION

The Employer agrees to implement the Local Union Credit Plan. Deductions will be made from the employee's pay check by the Employer upon presentation of authorization. This Plan will be without charge to the Employer.

## ARTICLE 30 - CORPORATE OR PARTNERSHIP

If the Employer be or becomes a corporation, the Agreement shall affect all the

- 18 -

workers in the Employer's business whether such Employees be stockholders or not, and all such workers are included in the term "Employee" as used in this Agreement. All such Employees shall be Union members regardless of whether they are blood relations of the Employer or any of the officers of the corporation.

## ARTICLE 31 - REAL PARTY IN INTEREST

It is mutually agreed that the Union is the real party in interest under the terms of this agreement with respect to the proper enforcement of any of its provisions, and no individual member of the Union may take any action with reference to any subject matter covered by this Agreement with the consent of the Union. No member of the Union shall have the right to institute any legal proceedings in any sort =or before any administrative tribunal against the Employer, on account of any matter directly or indirectly arising out of this Agreement or for the alleged breach thereto, without the written consent of the Union.

## ARTICLE 32 - SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon the parties herein, and their successors and assigns, and no provision herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer or assignment of the parties herein, or by any change to any other form of business organization, or by any change geographical or otherwise, in the location of the parties herein. The parties agree that they will not conclude any of the above transactions unless an agreement has been entered into as a result of which this agreement shall continue to be binding on the person or persons or any business organization continuing the business. It is the intent of the parties that this ,agreement shall remain in effect for the full term thereof regardless of any change of any kind of management, location, form of business organization or ownership.

## ARTICLE 33 - SEPARABILITY

It is the express purpose and intent of the parties hereto that this Agreement shall conform in all respects to existing and future Federal and State Legislation. Should any modification become necessary in order to effect such compliance, this Agreement shall be deemed to be automatically modified in that respect. However, all other provisions contained herein shall remain unaltered.

## ARTICLE 34 - REOPENING OF CONTRACT

Upon expiration of three (3) years from the effective date of this agreement, the Union may reopen the Agreement as to wages, hours, working conditions and general fringe benefits, upon serving sixty (60) days written notice to the other party.

In the event of a reopening of the Agreement, of the parties hereto are unable to reach a subsequent Agreement, Article 17 of the Agreement shall be inoperative.

## ARTICLE 35 - DURATION OF AGREEMENT

This Agreement shall be in force from October 1, 2003 6 to September 30, 2006 9 and shall be deemed automatically renewed from month to month thereafter, unless either party hereto serves upon the other, notice of termination or proposal modifications at least sixty (60) days in advance of the termination of this Agreement or during any period of automatic extension.

## ARTICLE 36 - MISCELLANEOUS

The Company will provide for a bank in the immediate vicinity of the company for the cashing of payroll checks at no cost to the employee; however if the Company does not have a designated bank the Company will then provide the cashing of the checks on company time or cash the checks for their employees.

## ARTICLE 37 - RULES AND REGULATIONS

The following are the current general rules and regulations to be followed by all Employees. These rules are not exhaustive and may be changed or modified by the Employer in its sole discretion. Violation of any of the following rules will be considered a violation of an Employee's job duties and may jeopardize an Employee's employment.

1. Employees have the responsibility to call Employer when they will be at least 30 minutes absent from work. Any Employee reporting late for work must report to the office before starting work. Unreported absences from work or during work can result in dismissal by the Employer.

2. Employees are to perform assigned work and produce work of satisfactory quality.

3. Drinking alcoholic beverages on the job is prohibited. Appearing for work while intoxicated will be grounds for dismissal.

4. Employees issued equipment are responsible for the care of said equipment.

5. Employees are to follow instructions from their supervisors. Failure to do so will be grounds for dismissal.

- 20 -

6. Horse-play and fighting on the job is prohibited.

7. Smoking is not permitted except in the lunch area.

8. All posted safety rules are to be followed.

9. Offensive speech or behavior to other Employees is prohibited.

10. Gambling is not allowed on Employer's property.

11. Stealing of any equipment, uniforms, or other property belonging to the Employer or other Employees is prohibited and ground for dismissal.

12. Employees are responsible for cleaning up their work areas during and after their shifts.

13. Improper use of the Time Clock, such as punching any other card other card than your own, is prohibited and cause for dismissal.

14. No weapons, fire-arms or knives may be carried onto or kept on Employer's property.

15. Any use or sale of drugs (except for any medication prescribed by a physician for ingestion while at work or over the counter medication) is prohibited and will be grounds for dismissal.

16. Beverages and food are only allowed in the lunch room. All left over foods, etc. must be deposited in the trash can after lunch.

17. All Employees must provide and wear suitable footwear as a condition of employment.

18. Employees are responsible for any lost or stolen tools or any lost or stolen personal property .

19. Excessive talking or interfering with other Employees is prohibited.

20. Sleeping on the job is prohibited and may result in dismissal.

21. No Employee shall sit, walk or rest upon any products, machinery or merchandise.

22. Loitering in other work areas is not permitted.

23. Employees must timely report to their work station at the end of a work break.

24. Employees may not leave the premise during work hours without express permission from office personnel.

25. Insubordination and obscene or abusive language will not be tolerated.

26. Employees are not permitted to leave the premises during any work breaks.

27. Employees are not to punch in until they are in their work clothes or uniform; after punching out for the day, Employees are required to wash up and/or change clothes.

28. Employees not reporting for work without notification to Employer's office personnel and providing a current address and anticipated return date will be considered as leaving the employ of the Employer. If rehired, such Employee will be considered a new Employee and will not receive any benefits for time previously employed.

29. Employees must report any accidents with equipment to office personnel immediately.

30. Employees are to be at their work station prior to the beginning of or continuation of their work shift. Violations of the above will be addressed through notification by the Employer as described in Article 19.

For the Company                          For the Union

SUPREME OIL COMPANY                      LOCAL 1245 UFCW


By_____                  By_____

## APPENDIX A

## VACATION REPLACEMENT EMPLOYEES

1. The Company may employ vacation replacements during the vacation periods set forth in Article 9(B) in any calendar year.

2. Vacation replacement employees shall be deemed temporary, in accordance with Article 2(B) of the collective bargaining agreement between the parties, except that their temporary status shall not be limited to sixty days and may continue for the entire replacement period, but in no event beyond October 31 in any calendar year.

3. A vacation replacement employee who continues in employment after October 31 in any calendar year shall be deemed a regular employee fully covered by the collective bargaining agreement as of November 1 and shall be credited for all previous time worked as a replacement for all purposes under the collective bargaining agreement between the parties including, but not limited to, the probationary period.

4. Vacation replacement employees who have been employed for more than ninety (90) days shall be entitled to be retained according to the principle of seniority in the event that the Company retains any vacation replacement employees as regular employees.

5. Vacation replacement employees shall be compensated pursuant to the wage progression scale in the collective bargaining agreement once it is determined that the employee is no longer a vacation replacement employee but has been accepted as a regular employee. In no event does this designation create the right for the Union or said employee to seek retroactively from the date of designation as a regular employee any compensation differences created by this change in status, which is expressly waived by the Union and the employees.

EXHIBIT"2"



# UFCW Local 342/174 Affiliated Trust Funds

166 East Jericho Turnpike Mineola, NY 11501 Ph. 516-747-5980  Fax 516-294-4608

VIA CERTIFIED AND REGULAR MAIL
RETURN RECEIPT REQUESTED

January 9, 2008

Employer 0514

Supreme Oil Company
80 South Dean Street
Englewood, New Jersey 07631

RE:    Local 342 Pension Fund                          Local 342 Health Care Fund
       Local 342 Safety Education & Cultural Fund      Local 1 Joint Retirement Fund
       Local 342 Legal Fund                            Local 50 Pension Fund
       Local 342 Annuity Fund                          Local 635 Smoked Fish Retirement Fund
       Local 635 Fish, Seafood Workers Retirement Fund
     X Local 174 Commercial Healthcare Fund          X Local 174 Commercial Pension Fund

Dear Gentlemen:

PLEASE TAKE NOTICE that, pursuant to the terms of the collective bargaining agreement between U.F.C.W. Local 342, AFL-CIO ("the Union") and your company, the Union/Fund hereby submits to arbitration the dispute concerning your failure and/or refusal to make proper and timely contributions and remit required reports to the above referenced Funds.

PLEASE TAKE FURTHER NOTICE that, pursuant to the provisions of the Employee Retirement Income Security Act of 1974, as amended, and the collective bargaining agreement, the Union/Fund will seek, at the arbitration hearing, an award of the contributions due, together with interest, liquidated damages, the costs of the arbitration, including the arbitrator's fee, attorneys' fees and injunctive relief.

PLEASE TAKE FURTHER NOTICE that a copy of this demand is being filed with John Kennedy, the Arbitrator designated under the collective bargaining agreement, with a request that he hold the hearing of this matter on **January 30, 2008 at 9:00 AM, at the offices of the Union/Fund, 166 East Jericho Turnpike, Mineola, New York, 11501.** If your company fails to appear at the date and time specified herein, the Union/Fund will request that the Arbitrator proceed, notwithstanding the company's absence, to determine the controversy upon the evidence produced.

PLEASE TAKE FURTHER NOTICE that, pursuant to the provisions of C.P.L.R. 87503 (c), unless you apply to stay the arbitration within twenty (20) days of service of this Notice, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in court the bar of any limitation of time.

Very truly yours,

Funds Financial Administrator

cc:    William Clarke, Arbitrator
       Andrew Calcagno, Esq.